HANRAHAN and another, Respondents, vs. CITY OF JANESVILLE, Appellant.

*February 21—March 14, 1911.*

*Municipal corporations: Contracts for sewers: Assignment: Who may maintain action: Authority of officers: Plans and specifications: What bidders may rely upon: Computation of amount of work: Right to extra compensation.*

1. Where, with the consent of the city, contracts for the construction of sewers were sublet and the subcontractors fully performed the work thereunder, an assignment of the contracts by the original contractor to the subcontractors was valid and entitled the assignees to maintain an action for extra work done under the contracts, even though the city did not know of or consent to such assignment.

2. In dealing with a public corporation a contractor is bound to know the extent of the authority of its officers as well as of the corporation itself.

3. In bidding upon sewer work in a city governed by the general charter law, contractors are to be guided by the plans and specifications prepared and filed pursuant to sec. 925—214, Stats. (1898), and have no right to rely upon a "bidding sheet" containing computations of the amount of excavation and other work to be done, though prepared and furnished to them by the city engineer; and where such plans and specifications are cor-

rect, and especially where the contract in terms provides that the work shall be done in accordance therewith, the contractor cannot recover extra compensation for work required thereby, even though it is in excess of the amount shown by such bidding sheet.

4. The statute has placed the burden of computing the amount of work in such a case upon the bidders and not upon the city; and the courts are not bound to accept as true the testimony of witnesses to the effect that bidders could not compute the amount of excavation from plans which included profiles carefully drawn to scale, showing the existing surface of the street and the bottom line of the sewer.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed.*

Action to recover compensation for extra services alleged to have been necessarily performed by the plaintiffs for the defendant under contracts entered into between the parties for the construction of sewers. On July 7, 1904, the defendant published a written notice to contractors that it would receive bids and sealed proposals for furnishing materials for the construction and completion of sewers upon certain streets named therein. One M. J. Benson made an offer to furnish the materials and do the work necessary for the construction of such sewers upon said streets according to the specifications, profiles, plans, and details on file in the office of the city clerk, and on or about the 8th day of August, 1904, the defendant accepted the proposal of said Benson to furnish the materials and construct said sewers, and the parties entered into contracts for their construction. After the commencement of the work of constructing said sewers, said Benson, with the knowledge and consent of the defendant, sublet the work to the plaintiffs and they completed the contracts. The complaint alleged:

"That the specifications, plans, details and profiles for the construction of said work under said several contracts furnished by said defendant and its officers, were and are false,

imperfect, misleading and inaccurate in many parts and particulars, and by reason of such falsity, inaccuracy and incompleteness these plaintiffs were put to great expense and damage and loss of time and money in carrying out their said contracts, which was not within the contemplation of either party at the time of making said contracts, and which could not be foreseen by plaintiffs or by said Benson in entering into the same; and all of which labor and expense was in excess of the labor and expense it would have taken to have carried out said contracts had there been no such falsity, inaccuracy and incompleteness in said specifications, plans, bidding sheet, details and profiles of said work.

"That for the purpose of the information of bidders on the proposed work in the several districts hereinbefore mentioned, and for the guidance and information of said Benson and these plaintiffs in entering into said contracts with the said defendant, the said defendant submitted plans and profiles, details and bidding sheet of the proposed work in the several districts; that said plans and profiles, details and bidding sheet were expressly made a part of said several contracts; that such plans and profiles, details and bidding sheet were represented to the said Benson and to these plaintiffs as showing the surface grade of the several streets upon which such sewerage system was to be constructed and as showing the average cut or depth of trench necessary for the several sewers.

"That said profiles, details and bidding sheets represented and were held out to these plaintiffs and to said Benson as being a correct representation and statement of the depth and amount of excavation that would be necessary to be made upon each of the streets upon which such sewerage system was to be constructed, and every portion thereof, and that upon such representations these plaintiffs and said Benson relied as furnishing the information upon which they could and did figure the exact amount of excavation necessary under said several contracts, and it was so intended by said defendant that such plans and profiles, details and bidding sheets should be used for that purpose; that the said Benson and these plaintiffs relied upon and believed said plans and profiles, details and bidding sheets to be true and correct rep-

resentations and statements of the grade of the several streets and the depth to which such sewer should be laid and the excavations necessary therefor.

"That such profiles and plans, details and bidding sheets were and are defective, false and untrue, in that the said profiles and plans do not show the grade or surface of the street at all and are incorrect, defective and false in that respect and the average cut and depth of excavation is incorrectly stated in the bidding sheets and details; and that the said profiles and plans are so drawn and said bidding sheets are so prepared as to indicate that the amount of excavation necessary for the construction of such sewer is much less than the actual amount of excavation necessary to lay said sewer according to the contracts.

"That by reason of such defective and false plans and profiles, details and bidding sheets these plaintiffs were obliged to and did carry on excavations for all of said sewerage system under all of said contracts to a much greater actual depth than shown by said plans and profiles, to a large expense and cost to these plaintiffs over and above and in excess of what it would have cost to have made the excavations in accordance with the plans and profiles, in the sum of $5,555.70, no part of which has ever been paid, and that the said sum is now justly due and owing to plaintiffs."

The answer denied the charge of inaccuracy of the plans, profiles, specifications, and details, pleaded payment in full for all and every liability growing out of the building and construction of said sewers, and that it never had any contracts with the plaintiffs or either of them.

The action was tried without a jury. The court made findings covering many questions that do not arise on this appeal, and entered judgment in favor of plaintiffs for extra services in the sum of $2,079.72 with interest thereon from November 27, 1905. From such judgment the defendant appealed.

For the appellant there was a brief signed by *H. L. Maxfield,* city attorney, and *F. C. Burpee,* of counsel, and oral argument by *Mr. Burpee.* They contended, *inter alia,* that

the contract was nonassignable without the city's consent. *Burck v. Taylor,* 152 U. S. 634; *Omaha v. Standard Oil Co.* 55 Neb. 337; *Murphy v. Plattsmouth,* 78 Neb. 163; *Deffenbaugh v. Foster,* 40 Ind. 382; *Skobis v. Ferge,* 102 Wis. 122; *Johnson v. Vickers,* 139 Wis. 145. The statute determines the rights of the parties, and the estimates did not enter into the contract. *Chippewa B. Co. v. Durand,* 122 Wis. 85; *Ricketson v. Milwaukee,* 105 Wis. 591; *Kavanaugh v. Wausau,* 120 Wis. 611; *Burnham v. Milwaukee,* 100 Wis. 55; *Lee v. Racine,* 64 Wis. 231; *Appleton W. W. Co. v. Appleton,* 132 Wis. 563; *Rief v. Continental C. Co.* 131 Wis. 368; *More v. Milwaukee M. Co.* 126 Wis. 41.

For the respondents there were briefs by *Jeffris, Mouat, Smith & Avery,* and oral argument by *William Smith.* To the point that the city was responsible for the erroneous estimates, they cited *Bentley v. State,* 73 Wis. 416; *Burnham v. Milwaukee,* 100 Wis. 55; 30 Am. & Eng. Ency. of Law (2d ed.) 1202; *Slusser v. Burlington,* 47 Iowa, 300; *Wood v. Fort Wayne,* 119 U. S. 312; *Robinson v. Rohr,* 73 Wis. 436; *Damkoehler v. Milwaukee,* 124 Wis. 144, 149; *Bunker v. Hudson,* 122 Wis. 43; 1 Dillon, Mun. Corp. § 237; and other cases.

VINJE, J. The first question raised by the defendant is that there was no assignment of the contracts from Benson, the principal contractor, to the plaintiffs, that was binding upon the defendant, owing to the fact that it never knew of, or consented to, such assignment. The trial court, however, found that it did, and we are strongly urged to set aside such finding as not supported by the evidence. We deem it unnecessary to determine the precise question raised, because the city is not seeking, by counterclaim or otherwise, to enforce any liability against the principal contractor or the plaintiffs, but only attempting, by defensive matter, to escape the liability sought to be enforced against it. All the work re-

quired to be done under the contracts was done by the plaintiffs with the knowledge and consent of the defendant. For it is admitted that Benson sublet the work to the plaintiffs; that the defendant consented in writing thereto; and that all the work called for by the contracts has been fully performed. That being so, it is not perceived how the defendant is prejudiced by an assignment to the plaintiffs of whatever claim there may be under the contracts by the rightful owner of such claim. Confessedly such owner was either Benson or the plaintiffs. Benson having assigned to the plaintiffs, the defendant is amply protected by such assignment from further suits by him. *Hankwitz v. Barrett,* 143 Wis. 639, 128 N. W. 430. And defendant was in position to interpose any defense against the plaintiffs that would have availed against Benson. So we must conclude that the assignment was valid and that plaintiffs were entitled to maintain the action.

The more important question is whether or not plaintiffs necessarily did more work than their contracts called for. The solution of this question will depend upon whether or not the plaintiffs were entitled to rely upon a so-called "bidding sheet" or estimate of cuts, hereinafter mentioned. The incorrectness of this sheet was admitted. It appears that the defendant city, as to sewers, is operating under the general charter law found in secs. 925—208 to 925—239c, Stats. Such law provides in secs. 925—208 to 925—212 that the city shall be divided into sewerage districts and a plan shall be adopted; that diagrams of the plans of the sewerage for each district shall be prepared, showing the lots and parcels of land, the main sewers, minor sewers, manholes, catch-basins, and all other matters pertaining to the system. It further provides for notice to be published of the proposed plan, of a hearing of objections, and a report thereon to the common council. The latter "shall then examine the same and may approve the plan as proposed or change it in such manner as they think proper, and approve as changed or

modified by them, or may reject the plan and direct the board to propose a new plan, in which case proceedings shall be had as before." Sec. 925—211. The next section provides that "when the plan for any sewerage district is finally determined complete diagrams of the same shall be prepared in duplicate and certified to be correct by the board of public works; one of such diagrams shall be filed in the office of the city clerk and one in the office of the register of deeds of the county within which the city is located." It is also made obligatory on the board of public works to present to the council on or before the first Monday of March in each year a report "of the sewers necessary or advisable to be constructed during the ensuing year." This report the council may approve as made or as changed or modified by it. Sec. 925—213. The provisions of sec. 925—214 are that:

"After the council shall have ordered the construction of any sewer the board of public works shall advertise for and receive bids to do the work so ordered, having first procured to be carefully prepared and put on file in the office of the board, for the examination and guidance of bidders, plans and specifications describing the work to be done and the kinds and qualities of materials to be used, as directed by the council, and shall let the contract to the lowest responsible and reliable bidder; provided, however, that the board shall have the right to reject all bids and re-advertise for proposals if they believe none of the bidders are responsible or that any agreement has been entered into between bidders to prevent competition; and provided further, that the contract shall not be binding till approved by the council and countersigned by the comptroller."

It is apparent from this scheme that every step in the progress of the construction of sewers, from the first proposed plan until the approval of the contract by the city comptroller, is a matter of record, and is a matter upon which the city as such acts. Sec. 925—214 prescribes precisely what the board of public works shall cause to be prepared and put on file for the examination and guidance of bidders, namely,

plans and specifications describing the work to be done and the kinds and qualities of material to be used, *as directed by the council.* The rule *Expressio unius est exclusio alterius* certainly applies here. In express terms the statute says what bidders shall examine and be guided by, namely, the plans, specifications, etc., prepared by the city pursuant to law and put on file for that express purpose. No mention or hint of any bidding sheet or estimate of cuts prepared by the city engineer or any one else is made. Indeed, the very contract entered into between the parties excludes the idea of any such sheet having been the basis thereof or even the inducement therefor. It says:

"Whereas, The said party of the first part hath made to the city of *Janesville* a proposal in writing, which is hereto annexed, marked 'Exhibit A,' to furnish all the material and do all the work for the construction and completion of certain sewers mentioned in said proposal, according to the specifications therefor, hereto annexed, marked 'Exhibit B,' and the profiles, plans and details thereof on file in the office of the street assessment committee, in the city clerk's office in said city; and the contract for doing said work has been awarded to the said party of the first part in the manner provided by law:

"Now, therefore, the said party of the first part, hereinafter designated 'the contractor,' for and in consideration of the covenants and agreements hereinafter contained, hereby covenants and agrees to and with the city of *Janesville* to furnish all the material and do all the work necessary and required for the construction and completion of ·the sewers in the streets, parts of streets, alleys, public grounds and lots mentioned in said proposal, and to prosecute the same diligently to their full completion, in accordance with and pursuant to the specifications therefor, and the profiles, plans and details thereof, and subject to the superintendence and direction of the street assessment committee, as in said specifications and this contract set forth. And said proposal, specifications, profiles and plans respectively, are hereby made a part of this contract, and mutually binding and obligatory in all respects to the same purpose and effect as if incorporated in this con-

tract; and all the requirements thereof respectively are agreed upon as of the terms of this contract, and as well of the character and quality of the material to be used and the manner of the construction of the said sewers therein specified and set forth, and the price to be paid for the construction and completion of said sewers."

This sets forth clearly that the plaintiffs agreed to furnish the material and do the work in accordance with and pursuant to the specifications, profiles, plans, and details on file in the city clerk's office, which were by the terms of the contract incorporated therein and made a part thereof. When we come, therefore, to inquire what the plaintiffs agreed to do, we find it clearly set out in the contract itself. They agreed to do the work, not as per bidding sheet, but as per plans and specifications incorporated into the contract. The bidding sheet was a mere fugitive piece of paper entitled "Sewer Estimate of Cuts in Janesville, Wis." It was found by the trial court to have been given by the city engineer to the contractor, Benson, when he came to figure on the contract. The city engineer stoutly denied that he gave it to Benson and says it was prepared by his assistant at the request of certain other contractors, and that in the preparation of it his assistant did the work for the contractors and not for the city. Benson said, speaking of the bidding sheet: "I got the blue prints to figure on, at the same time he [the city engineer] gave me this to expedite and help me in the matter." We will assume, however, that the fact is as found by the trial court, that it was given to Benson by the city engineer. Did the contractor have a right to rely upon it? The sheet consists of a computation as to each street showing minimum cut; maximum cut; average cut; distance of average cut; distance of cut over eight feet; and sizes of pipes. It is evident, therefore, that it is neither a plan, profile, specification, nor a detail, but a computation made from the profiles and specifications. It was not contemplated, called for, or mentioned either in the statute or the contract. In dealing with

a public corporation as the contractor did, he was bound to know the extent of the authority of its officers as well as of the corporation itself. "It is a general and fundamental principle of law," says Dillon in his work on Municipal Corporations, sec. 447 (4th ed.), "that all persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or of its officers to make the contract; and a contract beyond the scope of the corporate power is void, although it be under the seal of the corporation. . . . So, also, those dealing with the agent of a municipal corporation are likewise bound to ascertain the nature and extent of his authority. This is certainly so in all cases where this authority is special and of record, or conferred by statute. The fact that in such a case the agent made false representations in relation to his authority and what he had already done, will not aid those who trusted to such representations, to establish a liability on the part of his corporate principal." He was therefore chargeable with knowledge of the fact that the city engineer had no authority to change the depth of the excavations as shown by the profiles. The statute prescribed the mode of letting the contract and the basis upon which it was to be let, and that mode was exclusive and binding upon both the city and the contractor. He cannot now be heard to say that he relied upon something which he knew he had no right to rely upon. For every person dealing with an officer of a public corporation is presumed to know the extent of his powers in the particular case. Gilbert v. Pier, 102 Wis. 334, 78 N. W. 566.

But it is claimed that laymen and contractors could not determine the depth of cut from the profiles and therefore recourse to the bidding sheet was necessary. It is rather regretfully that we mention this claim, for it can hardly be disposed of without the use of language that may offend. The profiles were carefully drawn to scale with the horizontal and vertical scale plainly marked thereon, and showed the existing

surface of the street in each case, and the base or bottom line of the sewer as to each street, yet in spite of this fact several witnesses testified that the contractors could not compute the amount of excavation therefrom.   Such testimony challenges either the credibility or the intelligence of the witness, or both.   The witness *Lindquist* emphasized this challenge by first testifying that it was not practicable to figure from the profiles, and then by saying that as the work progressed he frequently scaled the profiles to check up and to ascertain how deep their work was; and that he used the profiles in the progress of the work.   Benson had been in the sewer contracting business for ten years and *Lindquist* for fifteen years.   They were neither laymen nor tyros.   It would seem as though it were high time they understood profiles. So much by way of a gentle reminder to witnesses that courts are not bound to accept as true all testimony that is given.

We have stated that the profiles showed the existing surface of the street in each case.   This is true, though such fact did not appear from those profiles on which only the established grade of the street was marked.   The established grade of each street, however, was a matter of public record, and the survey made by plaintiffs' witness Clausen, which was a surface survey of every street in question, shows that the established grades corresponded to the actual surface or else there would not have been a practical correspondence between Mr. Clausen's survey and the profiles.   That there was such a correspondence is shown by Mr. Clausen's testimony and is not disputed.   The contractors, by the profiles, plans, specifications, and details, were furnished correct data upon which to base their bid.   That a correct so-called estimate of cuts or bidding sheet would have saved them considerable work in computation is self-evident.   But the statute has seen fit to place the burden of computation upon the contractors and not upon the city, and there we must let it rest.

As no claim is made that more work was done or material

furnished than was called for by the profiles, plans, specifica-
tions, and details, and as these were all admitted upon the
trial to be correct, it follows that plaintiffs' claim should have
been disallowed in full.    This disposition of the case renders
it unnecessary to consider a number of questions' discussed in
the brief and upon the oral argument.

*By the Court.*—Judgment reversed, and cause remanded
with directions to dismiss the complaint upon the merits.